(Decided June 29th, 1898.)

---

## VIRGINIA RUSSELL *vs.* ROBERT L. WERNTZ ET AL.

*Construction of Devise—Power of Disposition Superadded to Life Estate.*

When a power of disposal accompanies a devise of a life estate, the power is limited to such disposition as a tenant for life can make, unless there are words clearly indicating that a larger power was intended.

A testator gave the residue of his estate to his wife, " To hold and dispose of as she may see fit, while she remains single, and at her death or marriage the remaining property is to be equally divided between my two daughters." *Held*, that the widow took only a life estate in the real property, with remainder to the daughters, and that she had no power to dispose of the same in fee.

Appeal from a decree of the Circuit Court for Anne Arundel County (JONES, J.) dismissing the appellant's bill for specific performance of a contract of purchase made by the appellee.

The cause was argued before MCSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ.

*James M. Munroe,* for the appellant.

*James R. Brashears,* for the appellee.

PAGE, J., delivered the opinion of the Court.

Jesse Russell, being seized and possessed of real and personal property, died in the year 1894. He left a will, in which, after providing for debts and funeral expenses, he makes " distribution " of his estate by two paragraphs: first, he bequeaths to his son George W. Russell, the sum of $800, to be paid out of a certain policy of life insurance; the second is as follows:

" Item second. I bequeath unto my present wife, Virginia Russell, all the residue of my estate, including all my property, both real, personal or mixed, to have and to hold and dispose *off* (sic) as she may see fit, while she remains single, and at her death or marriage, the remaining property is to be equally divided between my two daughters, Grace A. Russell and Jessie V. Russell." His wife was named executrix and acted as such. Grace Russell, having intermarried with Joseph Schmidt, died childless, a few days before her father. George, a child by his first marriage, and Jessie V. survived him, and are yet living.

The appellees contend that Virginia Russell, under the second clause of the will, acquired only a life estate in the realty, with power to dispose of that interest and no more; and that the daughters took a vested interest in the remainder. The contention of the appellant is, that the power of disposition being without limitation, the widow took a fee; or, if it be held she acquired only

a life estate, the full exercise of the power conferred on her would be effectual to convey a fee simple title in the reversion.

It is needless for us to say that in determining these questions, as in all other cases where the construction of wills is involved, the primary object is to discover the intention of the testator, and give it effect, if possible. If the language employed by the testator be such as to render it impossible, with any degree of precision, to fix what that intention is, the doubt must be resolved by invoking the aid of well-settled rules of construction. *Tayloe* v. *Mosher,* 29 Md. 451. So far, as to what estate he intended his widow to take, the words of the will leave no room for doubt. As was said by this Court in *Clark* v. *Tennison,* 33 Md. 93, where the devise was to the wife, " so long as she remains my widow; at her death to be, etc.", " the plain intent of the testator was that the widow should have the property no longer than widowhood. It is equally clear that the limitation over is in favor of the testator's children, who were the primary objects of his bounty after giving her the preceding estate." He failed in that case to limit it over to them after her marriage, but the court held .it to be necessary to carry out the plain intent, to ·construe the will as giving the estate to the children on the termination of the wife's estate, whether that be by· her marriage or her death. In the case at bar, the limitation is in express words : " at her death or marriage, etc.", the property is to go to the two daughters.

If the words just referred to were all the devise contained, there could be no question as to the proper construction of the paragraph. But there are others; the language is : " I bequeath—all the residue of my estate, real, personal or mixed, to *have* and to *hold* and *dispose* of as she may see fit, while she remains single, and at her death or marriage, etc." These words are very broad, but they are not clear; do they confer upon the widow a power to dispose of the property for the period she should remain single; or a power while she remained single to dispose of the whole estate, including the

reversion? The language employed may imply the one or the other, and that being so, we must inquire what were the purposes the testator had in mind when he wrote his will, and from his language, when considered in the light of these purposes, ascertain his intention; for after all upon his intention, legally and properly ascertained, must depend the scope and extent of the power.

At the time of making his will the testator had three children, one a son by a former marriage, the others, two daughters by the last marriage. One of the daughters dies a short while before her father, leaving a husband but no children. Her death caused him to make no alteration in his will. There is an evident purpose on the part of the testator to remember and provide for each member of his family. By the first paragraph he bequeaths to his son a sum of money, and explains why he had not left him more of his estate. The entire residue he devotes to the uses of his wife and her two children. As to them, his primary object was to provide for the wife during her life, provided she remained his widow. He intended she should enjoy the estate as long as she remained his widow. It was not a large estate and he must have thought that all the residue would be required to make her comfortable, and to enable her to supply the needs of the daughters. It also seems clear to us that he desired his children to take the estate after the interest of the widow had terminated by marriage or death. It was part of the " distribution " he intended to make of his estate; or in other words, part of his scheme of division, which was, a separate bequest for the son, a life estate or during widowhood in the residue for the widow, with remainder to the daughters. It was a disposition that commends itself as wise and proper under the circumstances. Can it be entertained for an instant that he intended to modify the whole plan, by conferring upon his widow a power of disposition of the reversion whereby she could defeat the rights of her daughters, appropriate the estate to her own uses, bequeath or devise it at will, and defy the wish

of her husband, that she should retain the estate only so long as she remained unmarried? The possession of such a power would be inconsistent with and would defeat every intent expressed in or to be gathered from the will. No such interpretation should be placed upon words, which, as we have seen, are ambiguous. All the clauses and every word in a will should receive such a construction as that, while effect is given to each, they are all made to harmonize with each other, so as to reach the general plan or scope of the entire will. If, however, the clause in question be construed so as to confer on the widow only the right to dispose of the estate to the extent of the interest she takes in the estate, it will harmonize with all the provisions of the will and all the intents to be gathered therefrom. But it is contended that the words " the remaining property " should be regarded as indicating that the testator intended that the appellant should have the right to diminish the *corpus* of the estate. But we do not accept this view. The will, evidently, was not drawn by one accustomed to the preparation of such instruments. The words employed were not chosen with regard to technical meaning. The property that passed under the second item, comprehended both realty and personalty. All of it was liable to waste or decay; some portions of it doubtless would deteriorate by its use, and other articles were of such nature that their use was their consumption. In view of the general and particular intents of the will, it is not straining the construction of these words to regard them as indicating the intention of the testator that his widow should not be accountable for such loss or waste as might result from her personal enjoyment of the property.

The construction we have thus placed upon the terms of this will is in line with all the authorities. The counsel for the appellant has relied strongly on the cases of *Benesch* v. *Clarke,* 49 Md. 504, and *Foos* v. *Scarf,* 55 Md. 310. The propositions announced in those cases we do not question. They affirm that when an estate is given generally, with power of disposition, the devisee

or legatee takes a fee; but when the property is given for life expressly, and there be annexed "a power of disposition of the *reversion*," the first taker takes but a life estate with the power annexed.    These cases differ from the case at bar in the fact that here there has been given no power to dispose of the reversion, but only a power to dispose of the interest that the widow took under the will; that is to say, of the life estate.    The principle we now apply is, that where a testator has given in express terms an estate for life with a power of disposition annexed, with remainder over, the words conferring the power, though absolute, may be qualified by restraining words connected with and explaining them, so as to confer only such absolute disposal as a tenant for life may make.    In such case a power to dispose of the reversion and thereby deprive the remainder man of his interest, would be wholly inconsistent with the intent to grant an estate not to endure beyond life, and it should be so held, unless there is a clear purpose manifested in the will, that the power shall extend to the disposal of the reversion.    These principles are maintained in the cases cited by this Court in *Benesch's case* (*supra*), pages 504, 505.    *Smith* v. *Bell*, 6 Peters 78; *Brant* v. *Va. Coal and Iron Co.*, 93 U. S. 326; *Bradley* v. *Westcott*, 13 Ves. 450; *Lewis* v. *Palmer*, 46 Conn. 454.

It follows from what we have said that the decree must be affirmed.

*Decree affirmed with costs.*

(Decided June 29th, 1898.)